## 19275

William Loyd PATTERSON, Respondent, v. DUKE POWER COM-
PANY and James S. Johnson, Appellants. LOYD'S INC., Respond-
ent, v. DUKE POWER COMPANY and James S. Johnson, Ap-
pellants. Lena C. PATTERSON, Respondent, v. DUKE POWER
COMPANY and James S. Johnson, Appellants.

(183 S. E. (2d) 122)

*Messrs. Andrew B. Marion, Esq., Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *Acker & Acker,* of Pickens, *Steve C. Griffith, Jr., Esq.,* of Charlotte, *for Defendants-Appellants,*

*J. D. Todd, Jr., Esq., Leatherwood, Walker, Todd & Mann,* of Greenville, *for the Plaintiffs-Respondents,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *Acker & Acker,* of Pickens, and *Steve C. Griffith, Jr., Esq.,* of Charlotte, *for Defendants-Appellants, In Reply,*

August 23, 1971.

Moss, Chief Justice.

William Loyd Patterson, Loyd's, Inc., and Lena C. Patterson, the respondents herein, brought separate actions against Duke Power Company and James S. Johnson, the appellants herein, alleging that they had trespassed upon the lands of the respondents and had cut thereon valuable timber located a considerable distance from an electrical transmission line which Duke maintained across said lands. Each of the respondents demanded damages for the trespasses so committed and for an injunction to prevent such in the future.

The appellants, by answer, admitted entering upon the lands of the respondents and cutting danger trees thereon for the purpose of protecting its electrical transmission lines. The appellants further allege that such entry and cutting was done pursuant to easements executed by the respondents' predecessors in title to Duke's predecessor in title. These easements did not specify the width of the right-of-way, but did grant:

"* * * the right, privilege and easement to go in and upon that tract of land * * * and to construct and maintain in, upon and through said premises in a proper manner with poles, towers, wires, and other necessary apparatus and appliances, a line for the purpose of transmitting power by electricity, together with the right, at all times, to enter upon said premises for the purpose of inspecting said lines and making necessary repairs and alterations thereon; together with the right to cut away and keep clear of said

lines all trees and other like obstructions that may, in any way, endanger the proper operation of the same."

These three cases were, by agreement, tried together at the 1970 June Term of the Court of Common Pleas for Pickens County, before the Honorable Frank Eppes, Presiding Judge, and a jury, resulting in a verdict for actual damages in favor of each of the respondents aggregating $1,900.00. These verdicts became final and have been paid by the appellants.

Thereafter, each of the respondents filed a petition in the original actions praying that the court issue a permanent injunction restraining the appellants from committing any future trespasses, asserting that they were entitled to such injunction as a matter of right in view of the verdict of the jury. It was further alleged that since no width of the right-of-way was specified in such easements it would be necessary for the court to determine the width of the right-of-way of Duke across the properties of the respondents in order to frame an injunction. It was further alleged that the testimony at the trial of the aforesaid trespass actions had revealed that for many years Duke had kept clear on each side of the center of the transmission line an area of 20-25 feet. The petitioners demanded that the court issue an injunction permanently enjoining Duke from clearing any right-of-way for a greater width than 25 feet from the center of the power line and from exercising or from attempting to exercise any rights or dominion over any of the properties of the respondents beyond such width.

The appellants, by their return, specifically denied that 20-25 feet on each side of the center of the transmission line would be of sufficient width to afford the necessary right-of-way as provided for in the written easements which granted the right to "construct and maintain * * * in the proper manner" a power line "together with the right to cut away and keep clear of said lines all trees and other like obstructions which may in any way endanger

the proper operation." The appellants further allege that in the event the court determines that the right-of-way should be of a specified width, such should be established at 90 feet and they should have, in addition to such, the right to cut danger trees within or without such right-of-way as is provided for in the written easements.

The issues raised by the petition for injunction and the return thereto was heard by the Honorable Frank Eppes as an equitable matter. At the hearing the respondents and the appellants presented additional testimony. Thereafter the court issued its order, from which this appeal is taken, holding that:

(1) "* * * Duke Power Company, its agents, servants and employees, be and the same are hereby permanently enjoined from clearing any right of way on the property of the Plaintiffs herein for a greater width than 25 feet from the center line of its presently located transmission line, and from exercising or attempting to exercise any rights or dominion over any of the property of the Plaintiffs herein beyond such width, and further, that the Defendant, Duke Power Company, its agents, servants and employees, be permanently enjoined from trespassing upon any of the lands of the Plaintiffs, their heirs and assigns, beyond such width."

(2) "* * * Duke Power Company, its agents, servants and employees, be permanently enjoined from felling or cutting down any timber on the property of any of the Plaintiffs which does not overhang transmission line facilities of Duke Power Company in a vertical plane. Its right in such an event shall be only to trim or cut away the offending branches. If at any time there should be any question in the minds of the Defendant, Duke Power Company, its agents, servants or employees, as to whether or not any tree not so overhanging such facilities in a vertical plane constitutes a danger tree because of it being unsound or unhealthy, and thus would be likely to fall, Duke Power Company is directed to confer with the owners of the prop-

erty involved and if mutual agreement cannot be reached as to whether or not such tree constitutes a danger to the transmission line of Duke Power Company because of its height or condition, then Duke Power Company shall be entitled to file a Petition in this Court asking that the offending tree be removed at the expense of Duke Power Company."

The appellants contend that the trial judge erred in finding that its right-of-way under the easements was no wider than 25 feet on each side of the center of its electric transmission line and in enjoining the exercise by it of any rights beyond such width.

There was conflicting testimony as to what was the width of the right-of-way maintained by Duke. There was evidence on behalf of the respondents that Duke had only utilized as a right-of-way 20-25 feet on either side of the center of the transmission line. The witnesses who so testified based their testimony on recollection and estimation and not upon actual measurement. Certain of the respondents' witnesses admitted that there was no evidence of any trees being cut at any time in recent years within 45 feet from the center of the transmission line on either side.

There was testimony on behalf of the appellants that for years they had maintained a cleared right of way of 100 feet, 50 feet on either side of the center of the transmission line. There was also introduced into evidence Department of Agriculture aerial photographs showing the respondents' property. A witness capable of interpreting such photographs testified that he had examined such and that these maps demonstrated that Duke had maintained a cleared way through the respondents' property varying in width from 110 feet to 80 feet. The appellants offered in evidence the National Electrical Safety Code which gives the minimum basic requirements for required right-of-way widths. An electrical engineer of twenty-two years' experience testified that in order to comply with minimum standards of the

aforesaid Code a right-of-way was required, in this case, of 34 feet on either side of the center line plus the right to cut danger trees, in view of the fact that the line here carried 100,000 volts of electricity.

Where a deed or other instrument grants the right-of-way but does not specify the width of such way, the determination of the width becomes basically a matter of the construction of the instrument with strong consideration being given to what is reasonably convenient and necessary to accomplish the purpose for which the way was created. Where an instrument makes reference to the purpose for which the way is to be used, such is of aid in determining the width of the way. 25 Am. Jur. (2d), Easements and Licenses, Section 78, P. 485.

We find a succinct statement of the above rule in *Hamlin v. Pandapas,* 197 Va. 659, 90 S. E. (2d) 829, where it is said:

"In *Buckles-Irvine Coal Co. v. Kennedy Coal Corp.,* 134 Va. 1, 19, 114 S. E. 233, 238, the court quoted with approval from *Atkins v. Bordman,* 2 Metc., Mass. 457, 468, the following: ' "When no dimensions of a way are expressed, but the object is expressed, the dimensions must be inferred to be such as are reasonably sufficient for the accomplishment of that object." ' "

In 28 A.L.R. (2d) at page 255, there are cited a number of cases from which there is deduced the following rule:

"A deed or other instrument which grants, reserves, excepts, or provides for, a right of way without indicating the width, is deemed to intend a way of such width as is 'reasonable,' or 'reasonably convenient,' or 'reasonably convenient and suitable,' or 'convenient and suitable' or 'convenient,' or the like, according to the various expressions used in the cases and sometimes consistently followed in a given jurisdiction. It may be doubted that these differences in expression indicate any difference in result, in ordinary circumstances."

In determining what would be a reasonably sufficient right-of-way for the maintenance of the transmission line in question, consideration must be given to the fact that the steel towers to which the lines are attached are 72 feet in height with two sets of cross arms thereon extending out 11 and 14 feet respectively on each side of the center of the tower. These steel towers are 700 feet apart and the transmission lines between such towers sag about 30 feet, creating a swing or blow out factor, all of which must be taken into consideration in determining what is a reasonably sufficient right-of-way. It is readily apparent that an easement of this type must of necessity be somewhat fluid and indefinite, particularly where the easement makes no provision as to the width of the right-of-way granted.

Duke was entitled under these easements to a right-of-way reasonably sufficient in width to properly operate and maintain its transmission lines across the properties of the respondents. It is our view that a right-of-way restricted to 25 feet on each side of the center of the transmission line is not reasonably sufficient to permit Duke to accomplish the stated purposes for which the easements were granted. Duke has but a single purpose in maintaining the right-of-way here in question, such being to protect and maintain its transmission lines and it would derive no benefit from the clearing of a right-of-way in excess of what was reasonably sufficient for such purpose.

It is our conclusion that the trial judge was in error in enjoining the appellants from clearing any right-of-way over the property of the respondents for a greater width than 25 feet from the center of the transmission line. Accordingly, the injunction so granted is vacated. This holding does not leave the respondents without remedy and should Duke trespass upon or clear a right-of-way in excess of what is reasonably sufficient to properly maintain and operate its transmission lines the respondents may recover damages therefor in an action at law. The adequacy of this remedy is demonstrated by the fact that the respondents, prior to

seeking an injunction, did follow such procedure and recovered damages.

The appellants contend that the trial judge was in error in enjoining them from trimming, felling, or cutting any tree which does not overhang the transmission line in a vertical plane. It is the position of the appellants that they have the right, under the written easements, to cut away and keep clear of said transmission lines all trees, sound or unsound, that may in any way endanger the proper operation of said lines, irrespective of the width of the right-of-way.

The written easements in question granted "the right to cut away and keep clear of said lines all trees * * * that may, in any way, endanger the proper operation of the" transmission lines. This is the "danger tree" provision of the easements. The right of the appellants to remove danger trees depends upon the proper interpretation of the grant contained in the respective easement. In our opinion, the language of this provision is clear and unambiguous and, therefore, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense. *Bruce v. Blalock*, 241 S. C. 155, 127 S. E. (2d) 439.

This Court has not defined what is meant by the term "danger trees" but other courts have dealt with the question. In *Collins v. Alabama Power Company*, 214 Ala. 643, 108 So. 868, 46 A.L.R. 1459, the Alabama Court considered the provision of a deed which conveyed the right "to cut and keep clear all trees and undergrowth and other obstruction on said strip, and danger trees adjacent thereto where necessary." In construing this provision the court held:

"Another controversy between the parties is as to the true meaning and effect of the stipulation concerning 'danger trees' already quoted.

"* * * We find no particular difficulty in construing 'danger trees,' as did the chancellor, in substance, to mean

trees which, by reason of size or condition, and contiguity to complainant's right of way, involve a concrete threat of injury to complainant's transmission or telephone lines, and that trees which have come to be dangerous since the grant are to be included in the class guarded against."

The grant of the right to cut and keep the transmission lines clear of danger trees does not limit the appellants to trim or cut away only trees or branches that overhang the transmission lines in a vertical plane, but the right is granted to cut away *all trees* that may in any way endanger the proper operation of the said transmission lines. We find no basis in the grant for holding that it applies only to unsound or unhealthy trees, because a sound or healthy tree may be a danger tree within the provision of the grant by reason of its height, size, location and proximity to the transmission lines.

It is our conclusion that the appellants had a right to remove any and all trees which would endanger the proper operation of the transmission lines whether such trees were within or without the normal right-of-way necessary for the maintenance of the structures and the transmission lines.

It follows that the trial judge was in error in enjoining the appellants from cutting down any trees on the property of any of the respondents which do not overhang the transmission lines in a vertical plane. The right of the appellants to cut danger trees, under the easements here, is not subject to the condition that they obtain the prior agreement of the respondents. In placing such a condition upon the appellants, the court has written into the grant a requirement not contained therein and to enforce such a requirement would be contrary to and in derogation of the danger tree rights granted the appellants in the easements. We conclude that the appellants have the absolute right under the easements here, to remove any and all trees which would endanger the proper operation of the transmission lines, and, therefore, the exercise of this right cannot be made to depend

upon the consent of the respondents or the approval of the court. The trial judge was in error in holding to the contrary.

The exceptions of the appellants are sustained and the judgment of the lower court is reversed and this cause remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.